IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GILBERT A. WHITFIELD,

                Plaintiff,                                 CV No. 06-1655-AS

      v.                                    FINDINGS AND
                                               RECOMMENDATION

TRI-METROPOLITAN TRANSPORTATION DISTRICT, a municipal corporation; CITY OF PORTLAND, a municipal corporation; CHRISTOPHER LAFRENZ; and DANIEL ROMANOWSKI,

                Defendants.

_____

ASHMANSKAS, Magistrate Judge:

      Currently before the court is a motion to dismiss the two claims plaintiff asserts against

defendant Tri-Metropolitan Transportation District ("Tri-Met") for violating section 504 of the

Rehabilitation Act ("RA") and Title II of the Americans with Disabilities Act ("ADA"). For the

reasons that follow, Tri-Met's motion to dismiss (No. 15) should be denied.

1 - FINDINGS AND RECOMMENDATION

BACKGROUND

This case arises out of a dispute between plaintiff and a Tri-Met bus driver.  As alleged in the First Amended Complaint ("FAC"):  plaintiff is disabled as a result of severe arthritis in his left leg and mitochondrial myopathy, which causes his face to droop and interferes with his speech. FAC ¶ 4.  On December 18, 2004, a Tri-Met bus driver accused plaintiff of stealing an all-day ticket, ordered him off the bus and called the police.  FAC ¶¶ 8-11.  Defendants Christopher LaFrenz and Daniel Romanowski, police officers of defendant City of Portland, responded to the call, arrested plaintiff and placed him in custody.  FAC ¶¶ 12- 14.  These three defendants have filed an answer, and the claims against them are not at issue in the pending motion.

Plaintiff claims that Tri-Met violated section 504 of the RA and Title II of the ADA, under two theories:  (1) that Tri-Met is vicariously liable for the actions of its employee, the bus driver, who discriminated against plaintiff because of his disability by questioning him, excluding him from the bus and calling the police, FAC ¶¶ 18, 23; and (2) that Tri-Met is directly liable for failing to properly train its employees to identify, accommodate and provide appropriate aids and services to disabled persons, FAC ¶¶ 19, 24.

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Tri-Met moves to dismiss the claims under both statutes for failure to state a claim upon which relief can be granted.

LEGAL STANDARDS

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure will only be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Gibson v. United States, 781 F.2d 1334, 1337 (9th Cir.1986), cert. denied 479 U.S. 1054 (1987) (citations and internal quotation marks omitted).  The

2 - FINDINGS AND RECOMMENDATION

review is limited to the complaint, and all allegations of material fact are taken as true and viewed in the light most favorable to the non-moving party.  <u>Cassettari v. Nevada County, California</u>, 824 F.2d 735, 737 (9th Cir.1987).

To prevail on a claim under section 504 of the RA, 29 U.S.C. § 794, a plaintiff must establish that: (1) he is handicapped within the meaning of the act; (2) he is otherwise qualified for the benefit or services sought; (3) he was denied the benefit or services solely by reason of his handicap; and (4) the program providing the benefit or services received federal financial assistance.  <u>Lovell v. Chandler</u>, 303 F.3d 1039, 1052 (9th Cir. 2002), <u>cert. denied</u> 537 U.S. 1105 (2003) (citing <u>Weinreich v. Los Angeles Co. Metro. Transp. Auth.</u>, 114 F.3d 976, 978 (9th Cir. 1997)).

Both the RA and the ADA prohibit discrimination on the basis of disability, but while the RA proscribes discrimination in all federally funded programs, Title II of the ADA only applies to public entities.  Thus, to prevail on a claim under Title II of the ADA, a plaintiff must establish that: (1) he is a qualified individual with a disability; (2) he was excluded from participation in, or otherwise discriminated against with regard to, a public entity's services, programs or activities; and (3) such exclusion or discrimination was by reason of his disability.  <u>Id.</u>

DISCUSSION

Tri-Met's arguments in support of its motion to dismiss fall into three categories.  Tri-Met asserts plaintiff has failed to state a claim under either statute because the allegations are insufficient in regard to:  (1)Tri-Met's failure to adequately train its employees; (2) the motivation underlying the challenged acts; and (3) the level of intent necessary to recover compensatory damages.

I.      <u>The Failure-to-Train Theory of Recovery</u>

Plaintiff seeks to hold Tri-Met directly liable for violating both statutes on the theory that

3 - FINDINGS AND RECOMMENDATION

the bus driver failed to accommodate his disability because Tri-Met did not adequately train her to recognize and accommodate disabled passengers. Plaintiff concedes that this is a novel legal theory, but argues that it is viable in light of 28 C.F.R. § 35.130(b)(7), a regulation implementing the ADA that requires a public entity to "make reasonable modifications in policies, practices and procedures when the modifications are necessary to avoid discrimination on the basis of disability[.]" Plaintiff argues that, under Rule 12(b)(6), the novelty of this legal theory is not an appropriate basis upon which to dismiss the claims to the extent they seek to hold Tri-Met directly liable.

Plaintiff's argument is persuasive. In reviewing the sufficiency of a complaint, the test is not whether recovery is very remote or unlikely. McGary v. City of Portland, 386 F.3d 1259, 1261 (9th Cir. 2004) (citing Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683 (1974)). Rather, the validity of a novel theory of recovery is best assessed in light of the underlying facts, rather than the pleader's mere allegations. McGary, 386 F.3d at 1270; Elec. Constr. & Maint. Co., Inc. v. Maeda Pac. Corp., 764 F.2d 619, 623 (9th Cir. 1985). For these reasons, "Rule 12(b)(6) dismissals are especially disfavored in cases where the complaint sets forth a novel legal theory[.]" McGary, 386 F.3d at 1270 (citation and internal quotation marks omitted).

Taking these cautions into consideration, to the extent plaintiff seeks to hold Tri-Met directly liable for failing to adequately train its employees, the claims should not be dismissed on their face. Tri-Met maintains, however, that plaintiff's failure to challenge a specific policy or procedure is fatal to these claims. Tri-Met is correct that "[b]ased on plaintiff's complaint, one can only guess at Tri-Met's training procedures." Reply, p. 4. That, however, is the purpose of discovery. At this stage in the proceeding, it would not be unusual, let alone fatal to plaintiff's case, that such evidence would be in Tri-Met's possession, not plaintiff's. Even if plaintiff does not allege what specific training

4 - FINDINGS AND RECOMMENDATION

procedure is at issue, or how it violates the statutes, plaintiff should be allowed to proceed with this theory and given the opportunity to gather evidence to support it.

II.      The Sufficiency of the Allegations Regarding Tri-Met's Motivation

Tri-Met asserts that the claims must be dismissed because the factual allegations do not indicate that Tri-Met, or its bus driver, had the requisite motivation to impose liability under either the ADA or the RA. The parties agree that, to recover under section 504 of the RA, plaintiff must prove that the alleged discrimination was motivated *solely* because plaintiff is disabled. The parties also agree that, to recover under Title II of the ADA, plaintiff must prove that his disability was a motivating factor underlying the alleged discrimination. The parties are correct that the causal standards under the two statutes are distinct.

In Head v. Glacier Northwest, Inc., 413 F.3d 1053, 1063-65 (9th Cir. 2005), the Ninth Circuit determined that a jury was not properly instructed about the motivation necessary to impose liability against an employer under Title I and Title IV of the ADA was not the same as that under the RA. In so doing, it considered the relevant language in those portions of the statute, as well as the phrase "by reason of" found in Title II. Id. at nn. 52-54. In light of the statutory text, the court held that "'solely' is not the appropriate causal standard under *any* of the ADA's liability provisions." Id. at 1065 (emphasis supplied). Considering precedent from other circuits and the plain language and purpose of the ADA, the court concluded that a "motivating factor" standard should be applied, which is also consistent with its own precedent. Id. (citing Hernandez v. Hughes Missile Sys. Co., 362 F.3d 564, 568 (9th Cir. 2004) (disability actually played *a* role in decision-making process and had *a* determinative influence on the outcome); Snead v. Metro. Prop. & Cas. Ins. Co., 237 1080, 1094 (9th Cir. 2001) (a discriminatory reason more likely motivated decision)).

5 - FINDINGS AND RECOMMENDATION

As explained below, plaintiff's allegations are sufficient to meet even the more stringent causal standard of the RA, *i.e.*, that his disability was the sole motivation for the alleged discrimination.  In regard to the claims for vicarious liability, Tri-Met argues that, as alleged, the bus driver could not have been aware of plaintiff's disability until she asked to reinspect his pass, at which point his impaired ability to communicate would have first been evident.  Thus, Tri-Met maintains that her motivation had to be based upon something other than plaintiff's disability, because there was no way she could have been aware that plaintiff was disabled at the time she asked to reinspect his pass.  Tri-Met is incorrect, however, because plaintiff alleges that he limps and his face droops. Viewing that allegation in the light most favorable to plaintiff, it would have been apparent to the bus driver on sight that plaintiff is disabled.

Tri-Met argues that plaintiff's impaired walk and facial droop are not disabilities that qualify for protection under the Acts, because plaintiff does not specifically allege impairment of a major life activity resulting from either of those two physical symptoms.  With that argument, however, Tri-Met asks the court to apply too stringent a standard in evaluating the sufficiency of plaintiff's allegations.  To allege the bus driver's awareness of plaintiff's disability, plaintiff is not required to specifically allege that she perceived an impairment of a particular major life activity.  Even if that were the case, viewing the allegations in the light most favorable to plaintiff, it would be reasonable, for example, to infer from the allegation that plaintiff limps that it is apparent on sight that his major life activity of walking is impaired.  Thus, the court rejects Tri-Met's assertion that the allegations necessarily lead to the conclusion that the bus driver could not have known plaintiff was disabled until after he spoke.

Viewing the allegations in the proper light, plaintiff alleges that his disabilities are physically

6 - FINDINGS AND RECOMMENDATION

manifested in a way that would have been immediately apparent to the bus driver.  FAC ¶¶ 4, 10. He alleges that he showed a valid bus pass upon boarding, but that she nonetheless called him back to the front of the bus to reinspect the pass.  FAC ¶¶ 8-9.  He further alleges that after she accused him of theft, he had difficulty communicating with her because of his disability, resulting in her decision to exclude him from the bus.  FAC ¶¶ 10-11.  Contrary to Tri-Met's assertion, the allegations should not be interpreted to foreclose evidence that the bus driver was  solely motivated by plaintiff's disability.

Assuming the truth of the allegations and viewing them in the light most favorable to plaintiff, as the court is required to do, plaintiff has sufficiently alleged that his disability was the sole reason the bus driver discriminated against him.  That is sufficient to state a claim under the RA, and consequently, in light of its less stringent causal standard, the ADA.  To the extent its bus driver was improperly motivated by plaintiff's disability, Tri-Met is vicariously liable .  See Duvall v. County of Kitsap, 260 F.3d 1124, 1141 (9th Cir. 2001) (under Title II of ADA and section 504 of RA, a public entity is liable for the vicarious acts of its employees).

To the extent plaintiff bases his claims on an alleged failure to train, it will be very difficult to establish a motive on the part of Tri-Met sufficient to hold it liable for a direct violation of the RA, and to a lesser extent the ADA.  Nonetheless, as noted above, the claims should not be dismissed unless it is beyond doubt that plaintiff can prove no set of facts that would support his claim, even if the chance of recovery is very remote.

III.    The Discriminatory Intent Allegations in Support of Compensatory Damages

Tri-Met also asserts that plaintiff's claims for compensatory damages must be dismissed because there are no underlying factual allegations, but only conclusory allegations, that Tri-Met

discriminated "intentionally."  <u>See Ferguson v. City of Phoenix</u>, 157 F.3d 668, 674 (9th Cir. 1998,

<u>cert. denied</u> 526 U.S. 1159 (1999) (compensatory damages are not available under Title II of the

ADA or section 504 of the RA absent a showing of discriminatory intent).

      Tri-Met is correct that to recover compensatory damages, plaintiff must prove discriminatory

intent on the part of Tri–Met, *i.e.*, that Tri-Met acted with deliberate indifference, a standard that

requires:  (1) knowledge that a harm to a federally protected right is substantially likely; and (2) a

failure to act upon that likelihood.  <u>Duvall</u>, 260 F.3d at 1138-39 (describing standard for intentional

violations of Title II of the ADA and section 504 of the RA).

      Even assuming Tri-Met is correct that there are no underlying factual allegations to support

deliberate indifference on the part of Tri-Met or its bus driver, the argument is not persuasive.  In

essence, Tri-Met is asking the court to infer, from a lack of factual allegations underlying

discriminatory intent, that plaintiff can prove no set of facts that would support a claim for

compensatory damages.  The allegations, however, must be read in the light most favorable to

plaintiff.  Therefore, the court cannot assume from a lack of underlying factual allegations that no

such evidence exists.

      Moreover, no special pleading rules apply to these claims.  Under the general federal

standard of notice pleading, plaintiff need not allege specific facts to support his claims of

intentional discrimination.  Consequently, the bare allegation that Tri-Met discriminated

"intentionally" (FAC ¶¶ 18, 19, 23, 24) should be sufficient to state a claim for compensatory

damages under Title II of the ADA and section 504 of the RA.

<u>CONCLUSION</u>

      Tri-Met characterizes this case as no more than a fare dispute, and Tri-Met may ultimately

8 - FINDINGS AND RECOMMENDATION

prevail in that regard.  However, assuming the truth of the allegations and viewing them in the light most favorable to plaintiff, as is required at this point in the proceeding, the complaint passes muster under Rule 12(b)(6).  Consequently, Tri-Met's motion to dismiss (Docket No. 15) should be DENIED.

<u>SCHEDULING ORDER</u>

The above Findings and Recommendation are referred to a United States District Judge for review.  Objections, if any, are due no later than February 20, 2007.  If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

A party may respond to another party's objections within ten days after service of a copy of the objections.  If objections are filed, review of the Findings and Recommendation will go under advisement upon receipt of the response, or on the latest date for filing a response.

DATED this 5th day of February, 2007.


     /s/  Donald C. Ashmanskas
DONALD C. ASHMANSKAS
United States Magistrate Judge


9 - FINDINGS AND RECOMMENDATION