UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GILBERT A. WHITFIELD,

        Plaintiff,

    v.                                                                Civil No. 06-1655-HA

TRI-METROPOLITAN TRANSPORTATION
DISTRICT, a municipal corporation; CITY OF                OPINION AND ORDER
PORTLAND, a municipal corporation;
CHRISTOPHER LAFRENZ; and DANIEL
ROMANOWSKI,

        Defendants.

_____

HAGGERTY, District Judge:

      Pending in this action are a Motion for Summary Judgment [73] brought by defendant

Tri-Metropolitan Transportation District (TriMet) and a Motion for Partial Summary Judgment

[56] brought by defendants City of Portland and police officers Christopher Lafrenz and Daniel

Romanowski (the City, or City defendants).  Oral argument on these motions was heard on

March 9, 2009.  For the following reasons, TriMet's Motion for Summary Judgment is granted,

and TriMet is dismissed as a defendant from this action.  The Motion for Partial Summary

Judgment brought by the City [56] is also granted.  Plaintiff's Motion to Supplement [117] is

denied as moot.


1 - OPINION AND ORDER

**BACKGROUND**

This case arises out of a dispute between plaintiff Gilbert Whitfield (plaintiff, or Whitfield) and a former TriMet bus driver. Most of the factual allegations are undisputed.

Plaintiff alleges in his First Amended Complaint (FAC) that he is disabled as a result of severe arthritis in his left leg and mitochondrial myopathy, which causes his face to droop and interferes with his speech. On December 18, 2004, plaintiff boarded a TriMet bus. As plaintiff climbed the bus stairs to enter the bus, the driver was conversing with another passenger. Plaintiff waited briefly behind the passenger, then moved past and displayed his bus ticket to the driver.

The driver called to plaintiff and asked to see his ticket. Without speaking initially, plaintiff returned and presented his bus ticket to her. The driver confiscated it, declaring her belief that the ticket was invalid or stolen. The driver instructed plaintiff to exit the bus or pay the fare. Plaintiff refused to exit and occupied a seat. He advised the driver to call the police or a fare inspector and said that he "had rights."

A witness to the encounter, Jay Bailey, observed plaintiff advise the driver that he had purchased an all-day fare ticket and did not need to buy a new one. Bailey then told the driver that he had seen plaintiff purchase his all-day fare. The driver reiterated that she knew a bad ticket when she saw one. Plaintiff became angry, possibly used profanity, and the driver radioed TriMet dispatch. She reported that a passenger was acting in a threatening manner and she requested assistance. The dispatch operator notified Portland police.

Portland police officers LaFrenz and Romanowski met the bus at a stop. The officers boarded the bus and the driver said that she wanted plaintiff removed. The driver provided plaintiff's ticket to the officers. It has since been ascertained that the ticket was invalid because it had four holes punched in it. It was also torn in an unusual manner.

Plaintiff alleges that Lafrenz boarded the bus and without any reasonable cause ordered plaintiff off the bus. Plaintiff also alleges that the two officers grabbed him and without any provocation or reasonable cause, roughly slammed him into a nearby fence, causing injuries to plaintiff's right eye and forehead. Plaintiff further alleges that the officers shoved him into the back of a police car, causing severe pain in his arthritic leg.

The officers claim that plaintiff committed physical contact with them as he exited the bus, and that they perceived that he was spitting on them. Although plaintiff disputes the degree of this contact and spitting, and whether such actions were intentional, he concedes that he may have bumped Romanowski as he was walking down the steps of the bus and that his speech impairment may have caused spit to contact Lafrenz. Pl.'s Resp. to the City's Mem. In Supp. at 6-7.

At oral argument, counsel for the City acknowledged that plaintiff was handcuffed and arrested upon exiting the bus. The bus continued on its route. While Lafrenz stayed with plaintiff, Romanowski followed the bus and interviewed the driver.

## CLAIMS AGAINST TRIMET:

At oral argument, plaintiff acknowledged that he has waived his Rehabilitation Act (RA) claim against all defendants. Plaintiff's remaining claim against TriMet asserts that TriMet violated Title II of the Americans with Disabilities Act (ADA). This claim is brought under two theories: (1) that TriMet is vicariously liable for the actions of its employee, the bus driver, who discriminated against plaintiff at least in part because of his disability, and (2) that TriMet is directly liable for failing to properly train its employees to identify, accommodate and provide appropriate aids and services to disabled persons. FAC at Paras. 18-19, 23-24.

## CLAIMS AGAINST THE CITY:

3 - OPINION AND ORDER

Plaintiff asserts six claims against the City defendants.  One claim is brought under the ADA, and all six pertain to the conduct of the officers who arrested plaintiff:

* a false arrest claim against Lafrenz and Romanowski;

* a battery claim;

* a negligence claim against the two police officer defendants and the City of Portland;

* a claim that the officers' decision to arrest plaintiff was intentionally based on plaintiff's disability in violation of the RA;

* claims that the officers' decision to arrest plaintiff was intentionally based on plaintiff's disability in violation of the ADA; and

* a civil rights claim against the City of Portland and Lafrenz and Romanowski for unlawful arrest and excessive force.

## PENDING MOTIONS

Defendant TriMet moves for summary judgment on all claims brought against it. Defendant City moves for summary judgment on all claims except the civil rights claim for excessive force and the battery claim.  As noted, plaintiff withdrew his RA claim, and so summary judgment is granted to all defendants as to that claim.  The remaining ADA claims against TriMet and the City, and claims against the City for false arrest, negligence and unlawful arrest are the subject of defendants' summary judgment motions.

## STANDARDS

**1.    Summary Judgment**

A party is entitled to summary judgment as a matter of law if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact."  Fed. R. Civ. P. 56(c); *see Bahn v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).  The moving party carries the initial burden of proof and meets this burden by identifying portions of the record on file that demonstrate the absence of

any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). Once the initial burden is satisfied, the burden shifts to the non-moving party to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Id.*

The court must view the evidence in the light most favorable to the non-moving party. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000) (citations omitted). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *MetroPCS, Inc. v. City and County of S.F.*, 400 F.3d 715, 720 (9th Cir. 2005) (citation omitted). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir. 1981) (citing Fed. R. Civ. P. 56(c)).

Deference to the non-moving party has limits. The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The "mere existence of a scintilla of evidence in support of the [non-moving party's] position would be insufficient." *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 252 (1986). Where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

**2.      ADA Claims**

The ADA protects a "qualified individual with a disability" from certain kinds of discrimination. The ADA's prohibition is contained in 42 U.S.C. § 12132: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

The Ninth Circuit has outlined what a plaintiff must prove to prevail on this kind of claim under the ADA.  To prove that a public program or service violated Title II of the ADA, a plaintiff must show that: (1) he or she is a "qualified individual with a disability"; (2) he or she was either excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability. *Weinrich v. L.A. County Metro. Transp. Auth.,* 114 F.3d 976, 978 (9th Cir. 1997).

A "qualified individual with a disability" is someone who has (1) a physical or mental impairment that substantially limits one or more of the individual's major life activities; (2) a record of such an impairment; or (3) is regarded as having an impairment.  42 U.S.C. § 12102(2)(A).

A person with a medical condition, even one that affects his or her choice and range of activities, is not considered disabled under the ADA without a showing that the condition restricts a "major life activity."  *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 202 (2002).  Under the ADA, "major life activity" means "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(I).

Three factors are to be considered in determining whether an individual is substantially limited in a major life activity: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long-term impact, or the expected permanent or long-term impact of, or resulting from, the impairment.  29 C.F.R. § 1630.2(j)(2).

Being "substantially limited" refers to an individual's inability to perform a major life activity as compared to the average person in the general population, or a significant restriction "as to the condition, manner, or duration" under which an individual can perform the particular

6 - OPINION AND ORDER

activity.  29 C.F.R. § 1630.2(j)(1)(i)-(ii); *see also Thompson v. Holy Family Hosp.*, 121 F.3d

537, 539-40 (9th Cir. 1997).

## ANALYSIS OF ADA CLAIMS

**1.    Is plaintiff a qualified individual under the ADA?**

Plaintiff contends that he has adduced sufficient evidence to raise issues of fact as to

whether he is substantially limited in the major life activity of speaking.  Pl.'s Resp. to the City's

Mem. In Supp. at 11-14; Pl.'s Resp. to TriMet's Mem. In Supp. at 15-17.  Plaintiff has produced

his own testimony that his myopathy causes slurring and spitting that interferes with his ability

to communicate, especially when he is excited.  Plaintiff also presented an affidavit from a

friend, Clifford Walker, who averred that plaintiff always has been difficult to understand and

that Walker's grandchildren believe plaintiff might be disabled.  Plaintiff also referred to an

affidavit by Bailey, who stated that he thought plaintiff was disabled when he heard him speak.

Additionally, plaintiff noted the defendant officers' observations that something looked wrong

with plaintiff.

The Ninth Circuit has recognized that a plaintiff's testimony may at times be sufficient to

establish an issue of material fact regarding whether a major life activity is impaired.  In *Head v.*

*Glacier NW, Inc.*, the court observed that:

> Ninth Circuit precedent does not require comparative or medical evidence to
> establish a genuine issue of material fact regarding the impairment of a major life
> activity at the summary judgment stage. Rather, our precedent supports the
> principle that a plaintiff's testimony may suffice to establish a genuine issue of
> material fact.  * * *  We hasten to add that our holding in no way impugns our
> longstanding precedent that conclusory declarations are insufficient to raise a
> question of material fact.  To survive summary judgment, an affidavit supporting
> the existence of a disability must not be merely self-serving and must contain
> sufficient detail to convey the existence of an impairment.

Although it is true that comparative or medical evidence is not required to survive summary judgment, a plaintiff nevertheless bears the burden of establishing a *prima facie* case and providing sufficient evidence relating to his or her alleged impairment.  The mere fact that a plaintiff "simply *differs* from the average person in how she performs a major life activity is patently insufficient for [establishing] a substantial limitation."  *Fraser v. Goodale*, 342 F.3d 1032, 1040 (9th Cir. 2003).  Courts "must consider the nature and severity of the [plaintiff's] impairment, the duration or expected duration of the impairment, as well as the permanent or long term impact of the impairment." *Id*. at 1038 (internal citations omitted).  It is in undertaking this careful consideration that the caution given by the Ninth Circuit in *Head* is especially significant: although comparative or medical evidence is unnecessary, in lieu of such evidence a plaintiff's testimony must convey the grounds for concluding that an issue of material fact exists regarding whether a major life activity is impaired.  *Head*, 413 F.3d at 1059; *see also Rohr v. Salt River Project Agricultural Improvement and Power Dist.*, 555 F.3d 850, 859 (9th Cir. 2009).

Plaintiff claims that he is substantially limited in his ability to perform the major life activity of speaking.  In accordance with the standards recognized above, this allegation asserts that – as compared to the average person in the general population – plaintiff experiences a significant restriction regarding the condition, manner, or duration under which he can communicate. *Rohr*, 555 F.3d at 858 (citations omitted).

Where there is insufficient evidence that a disability has affected a plaintiff's ability to communicate generally, there is no substantial interference with an ability to speak.  *See Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 507 (7th Cir. 1998); *see also Burris v. Richards Paving, Inc.*, 461 F. Supp. 2d 244, 249-50 (D. Del. 2006) (removal of the larynx is a permanent impairment, but the plaintiff's ability "neither renders him unable to speak nor significantly

restricts the 'condition, manner or duration' of his speech when compared with the speaking abilities of an average person in the general population").

Here, there is no dispute that plaintiff communicated with the driver and police, and was understood by all parties around him.  There is also no evidence presented of any significant restrictions that preclude or impair plaintiff's ability to communicate generally.  Plaintiff's supporting affidavits refer to the manner in which plaintiff is sometimes perceived by others, but fail to reveal a genuine issue of material fact as to whether – despite his permanent impairment – plaintiff is *significantly* limited in communicating.

This court concludes that the evidence as a whole, including plaintiff's testimony about the impact his disability has on his ability to communicate, fails to establish a triable fact issue regarding whether plaintiff is substantially limited in the major life activity of speaking.  Although there is evidence that plaintiff became harder to understand when he was upset, there is insufficient evidence to support plaintiff's contention that his impairment permanently limits on his ability to communicate as compared to the average person in the general population.  *See McWilliams v. Jefferson County*, 463 F.3d 1113, 1116-17 (10th Cir. 2006) (summary judgment proper when evidence showed only intermittent episodes that caused difficulty in major life activities); *Croy v. Cobe Labs., Inc.*, 345 F.3d 1199, 1204 (10th Cir. 2003) (affirming summary judgment when plaintiff established only that she was often temporarily unable to function as the average person would).  As the Ninth Circuit recognized in *Fraser*, the ADA applies only where the limitation is "'in fact substantial,'" and that a person "suffers *some* limit does not mean she suffers a *substantial* limit."  *Fraser*, 342 F.3d at 1040-41 (quoting *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 565 (1999), and citing *EEOC v. United Parcel Serv., Inc.*, 306 F.3d 794, 802-03 (9th Cir. 2002)).

**2.     Should plaintiff be "regarded as" ADA-qualified?**

9 - OPINION AND ORDER

Although plaintiff failed to plead a "regarded as" disability claim, plaintiff has subsequently raised the argument that people perceive him as disabled because he limps, his eye droops, and he slurs his speech. This assertion is rejected as improperly pled and also on grounds that the allegation lacks merit.

"It offends the ADA as much for a person to be 'regarded as' having a disability, as actually to have one." *E.E.O.C. v. United Parcel Serv., Inc.*, 306 F.3d at 803-04. There are two ways by which individuals may advance a "regarded as" ADA claim: alleging that (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, non-limiting impairment substantially limits one or more major life activities. In both cases, it is necessary that a covered entity entertain misperceptions about the individual – it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting. These misperceptions often "resul[t] from stereotypic assumptions not truly indicative of . . . individual ability." *Tenn. v. Lane*, 541 U.S. 509, 516 (1978) (quoting 42 U.S.C. § 12101(A)(7).

To establish discrimination based on a perceived disability, plaintiff must show that TriMet and the Portland police (the "covered entities" for these purposes) treated him as if his impairment substantially limited major life activities, even though his impairment did not cause such limitations. 29 C.F.R. 1630.2(1). Even if this claim were properly before the court, there is no evidence that TriMet or Portland police believed that plaintiff suffered from an impairment that substantially limited him in a major life activity, or that there was a causal connection between that belief and plaintiff's arrest.

"As with real impairments, . . . a perceived impairment must be substantially limiting and significant." *Thompson*, 121 F.3d at 541 (citation omitted).   The Ninth Circuit has explained a plaintiff's burden in presenting a "regarded as" claim:

> in order to state a "regarded as" claim a plaintiff must establish that the [covered entity] believes that the plaintiff has some impairment, and provide evidence that the [covered entity] subjectively believes that the plaintiff is substantially limited in a major life activity.  If the plaintiff does not have direct evidence of the [covered entity's] subjective belief that the plaintiff is substantially limited in a major life activity, the plaintiff must further provide evidence that the impairment imputed to the plaintiff is, objectively, a substantially limiting impairment.

*Walton v. U.S. Marshals Serv.*, 492 F.3d 998, 1006 (9th Cir. 2007) (referring to an employment ADA case and citing *Thornton v. McClatchy Newspapers, Inc.*, 261 F.3d 789, 798 (9th Cir. 2001) (affirming district court's judgment for defendant on plaintiff's "regarded as" claim because of a lack of specific evidence that the covered entity viewed her as substantially limited, and the plaintiff's restrictions did not rise to the level of substantial limitation)).

This court concludes that there is no genuine issue of material fact concerning whether plaintiff's disabilities substantially limit him in a major life activity.  Plaintiff's untimely assertion that he might qualify for ADA protections because of how others perceive him is also rejected.  Accordingly, for these reasons, defendants are entitled to summary judgment on plaintiff's ADA claims.

Assuming without deciding that plaintiff presented sufficient grounds to raise a question of fact as to whether he were ADA-qualified or "regarded as" ADA-qualified, defendants are nevertheless entitled to summary judgment on these claims.  The court addresses the alternative grounds for summary judgment below.

**3.     Even if plaintiff were ADA-qualified there was no intentional discrimination**.

To recover monetary damages under Title II of the ADA, a qualified individual with a disability must prove intentional discrimination on the part of the defendant. *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001) (citation and footnote omitted). The applicable standard is "deliberate indifference." *Id*. Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood. *Id*. at 1139.

In order to attempt to establish deliberate indifference by TriMet, plaintiff cited the extensive record of complaints against the driver who confiscated plaintiff's ticket. Plaintiff presented twenty-three complaints brought against the driver over a span of eight years. Six of the complaints were disability-related and therefore are possibly relevant to establishing a question of whether intentional discrimination could be said to exist. Four of these six complaints were found to lack merit after investigation. There is no significant challenge to the evaluation that TriMet subsequently provided about those complaints. Although the record leaves no doubt that the driver involved in this action was a poor employee, and may have had two valid disability-related complaints leveled against her, the record is also bereft of sufficient grounds to suggest or infer that TriMet was deliberately indifferent to the likelihood of harm occurring to a federally protected right.

Plaintiff also claims that an inference of possible intentional discrimination may be drawn from the fact that the driver disregarded TriMet rules when she radioed dispatch, exaggerated the situation that she reported to dispatch, and insisted that the police remove plaintiff from the bus. There is nothing inherent in the driver's actions involving plaintiff from which a reasonable inference could be drawn that TriMet (or the driver) knew that a harm to a federally protected right was substantially likely to occur, and that TriMet (or the driver) failed to act upon that likelihood. The driver confiscated a ticket that had been improperly punched.

Witnesses to the encounter describe plaintiff as irate, profane, and confrontational to the driver. One witness recalled that plaintiff insisted that the driver call a "fare inspector." Pl.'s Ex. 3, Bailey Aff., Para. 4-6. Whether or not the driver's actions conformed with precise TriMet protocol, efforts to cast those actions in a light suggesting an awareness that plaintiff's rights under the ADA were likely to be harmed are unpersuasive.

To establish an inference of deliberate indifference as to the Portland police, plaintiff merely contends that plaintiff's arrest was based upon conduct related to plaintiff's disabilities. Specifically, plaintiff contends that both officers:

> recognized there was something wrong with Whitfield. Neither smelled alcohol
> or had any other indicators that plaintiff was intoxicated. Yet, they arrested
> Whitfield based upon conduct related to his disability, and once they recognized
> his disability, never reevaluated the decision to arrest him. Instead, they hauled
> him downtown for booking. In doing so, these officers failed to act on the
> warning signs that there was more going on than a fare dispute, or an out of
> control bus rider.

Pl.'s Resp. to the City's Mem. In Supp. at 18 (citations omitted).

Because of the officers' alleged failure to act "on the warning signs," plaintiff argues, there is "sufficient evidence for a reasonable jury to find that these defendants were deliberately indifferent to [plaintiff's] protected right to be free from discrimination." *Id*. This court disagrees.

The officers' decisions at the scene of plaintiff's arrest do not give rise to any reasonable inference that they had knowledge that harm to a federally protected right was substantially likely, or that they were failing to act on that likelihood. As addressed more extensively below, probable cause existed for the officers to arrest plaintiff.

### 4.    Alternative grounds for denying ADA claims as to TriMet.

For the reasons stated, this court concludes that plaintiff has failed to establish the existence of questions of fact regarding his possible qualifications under the ADA, or regarding

defendants' intentional discrimination.  Even if questions of fact existed regarding plaintiff's

ADA qualifications or TriMet's intentional discrimination, however, there are additional grounds

for granting summary judgment to TriMet on plaintiff's ADA claims.

As was recognized earlier in this litigation, plaintiff's theory for recovery against TriMet

was "novel":

> Plaintiff seeks to hold TriMet directly liable for violating both statutes on the
> theory that the bus driver failed to accommodate his disability because TriMet did
> not adequately train her to recognize and accommodate disabled passengers.
> Plaintiff concedes that this is a novel legal theory, but argues that it is viable in
> light of 28 C.F.R. § 35.130(b)(7), a regulation implementing the ADA that
> requires a public entity to "make reasonable modifications in policies, practices
> and procedures when the modifications are necessary to avoid discrimination on
> the basis of disability[.]"

*Whitfield v. Tri-Metropolitan Transp. Dist.*, Civ. No. 06-1655-AS, 2007 WL 690052, at *2 (D.

Or., February 28, 2007).

Plaintiff was permitted to "proceed with this theory and [was] given the opportunity to

gather evidence to support it."  *Id*. at *4.  After doing so, there is nothing presented in the record

supporting an allegation that TriMet failed to train its bus operators adequately regarding

disability issues, or failed to properly train the driver at issue in this case.  Plaintiff points to no

evidence that would give rise to any inference in this regard, and this court's examination of the

record finds none.

Defendant TriMet is entitled to summary judgment on all claims.  Because plaintiff has

failed to establish the existence of questions of fact regarding his possible qualifications under

the ADA, or regarding the City's possible intentional discrimination, the City is also entitled to

summary judgment as to plaintiff's RA and ADA claims.

**ANALYSIS OF PLAINTIFF'S REMAINING CLAIMS AGAINST THE CITY**

The remaining defendants in this matter are the city defendants, and the remaining claims are a false arrest claim against Lafrenz and Romanowski; a battery claim; a negligence claim against the two police officer defendants and the City of Portland; and a civil rights claim against the City of Portland and as well as Lafrenz and Romanowski for unlawful arrest and excessive force.

The City concedes that the battery claim and the excessive force claim are jury issues. The City seeks summary judgment on the claims for false arrest, negligence, and the civil rights claim directed against the City. The parties' briefing and submissions regarding the City's summary judgment motion – as well as the entire record – have been considered. For the following reasons, the City is granted summary judgment on these claims.

1.    **False Arrest**

Plaintiff argues that there was no probable cause to arrest him. In Oregon, the gravamen of a false imprisonment or false arrest claim is "the unlawful imposition of restraint on another's freedom of movement." *Buckel v. Nunn*, 891 P.2d 16, 21 (Or. Ct. App. 1995) (quotation omitted). The tort of false arrest requires proof of four elements: (1) a defendant must confine the plaintiff; (2) the defendant must intend the act that causes the confinement; (3) the plaintiff must be aware of the confinement; and (4) the confinement must be unlawful. *Ross v. City of Eugene*, 950 P.2d 372, 375 (Or. Ct. App. 1997); *see also Hiber v. Creditors Collection Serv., Inc.*, 961 P.2d 898, 901 (Or. App. 1998) (citations omitted). The plaintiff bears the burden to show the imprisonment. *Ross*, 950 P.2d at 375. The burden then shifts to the defendant to show that the imprisonment was not unlawful. *Id*. (citation omitted).

Here, there is no dispute that plaintiff was arrested soon after exiting the bus. In Oregon, an officer has probable cause to arrest if "there is a substantial objective basis for believing that more likely than not an offense has been committed and a person to be arrested has committed

it." *State v. Makuch*, 136 P.3d 35, 40 (Or. 2006) (citing ORS 131.005(11)).  "[W]here the

material, historical facts are not in dispute, and the only disputes involve what inferences

properly may be drawn from those historical facts, it is appropriate for this court to decide

whether probable cause existed . . . ."  *Peng v. Mei Chin Penghu*, 335 F.3d 970, 979-80 (9th Cir.

2003).

    As noted, there is no dispute that plaintiff was arrested and confined.  However,

defendants are entitled to summary judgment on the claim of false arrest if plaintiff has failed to

show a genuine issue of material fact as to whether his confinement was unlawful.  *Carr v. City

of Hillsboro*, 497 F. Supp. 2d 1197, 1211-12 (D. Or. 2007).  A peace officer is authorized to

"arrest a person without a warrant if the officer has probable cause to believe that the person has

committed . . . (b) A misdemeanor."  *Id*. at 1212 (quoting ORS 133.310(1)).  Under Oregon law,

an individual commits the crime of menacing if "by word or conduct the person intentionally

attempts to place another person in fear of imminent serious physical injury."  ORS 163.190(1).

    No single act must be proven to support a conviction for menacing; rather, the statute

requires that a person act by word or conduct to intentionally attempt to place the victim in fear

of imminent serious physical injury.  *State v. Greeley*, 184 P.3d 1191, 1193-94 (Or. App. 2008)

(quotation omitted).  A person could commit several different acts and, if by doing so intended to

attempt to place the victim in fear, the person would have committed menacing.  *Id*. (quotation

omitted).

    Probable cause to support an arrest exists when, under the totality of the circumstances

known to the arresting officers, a prudent person would have concluded that there was a fair

probability that the defendant had committed a crime.  *United States v. Garza*, 980 F.2d 546, 550

(9th Cir. 1992) (quoting *United States v. Potter*, 895 F.2d 1231, 1233-34 (9th Cir.1990)).  If the

facts known to an arresting officer are sufficient to create probable cause, the arrest is lawful,

16 - OPINION AND ORDER

regardless of the officer's subjective reasons for it.  *See Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).

There is no reasonable dispute that the officers at the scene were advised that the bus driver had been threatened, and that plaintiff was the person who made the threats.  Plaintiff has acknowledged that the driver radioed TriMet dispatch and reported that she had been threatened. "Plaintiff was accused by the bus driver of not having a proper ticket.  When he challenged this accusation, the bus driver called her dispatcher saying she was being threatened by Whitfield." Pl.'s Resp. to the City's Mem. Supp. Summ. J. at 1.  The officers have stated without contradiction that they went to the scene of the arrest in response to a report that a man had threatened a bus driver.  Lafrenz Aff. at Para. 2; Romanowski Aff. at Para. 2.  Plaintiff was identified by the driver as the man in question.  Under the totality of these circumstances, a prudent person would have concluded that there was a fair probability that plaintiff had committed a crime.  Because the officers had probable cause to arrest plaintiff, the City is entitled to summary judgment on plaintiff's false arrest claim.

The court reaches this conclusion without taking into consideration the possible significance of statements made by the driver to Romanowski.  As conceded by counsel for the City at oral argument, plaintiff was arrested soon after he exited the bus.  Any statements the driver made to Romanowski were uttered well after plaintiff's arrest.  Because probable cause existed at the time plaintiff was arrested, however, plaintiff's Motion to Supplement the Record [117] with further argument about the relevance of the driver's statements to Romanowski is denied as moot.

## 2.    Negligence

Plaintiff does not dispute that he is trying to maintain a state law claim on the same set of facts as his civil rights claim.  This is not permitted under the current law of this District:

> as a matter of principle, the court recognizes that a plaintiff may allege negligence
> as a basis for recovery separate from § 1983 for acts arising in the Fourth
> Amendment search and seizure context.  The negligence claim, however, should
> not be founded on the same facts that give rise to the § 1983 claim.

*Shilo v. City of Portland*, Civ. No. 04-130-AS, 2005 WL 3157563, * 1 (D. Or. November 22,

2005) (citing *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1263 (11th Cir. 2001).

Accordingly, because a state common-law claim of negligence may be maintained

separately from a §1983 claim only when the negligence claim is based on facts that are different

from the facts on which the §1983 claims are based, the City is entitled to summary judgment on

plaintiff's negligence claim.

**3.      Civil rights action against the City.**

Plaintiff asserts claims against the City under U.S.C. § 1983 based upon the City's

allegedly unconstitutional policies, customs, or practices.  Defendants seek summary judgment

on the claim that the City "fail[ed] to train, supervise, or discipline its officers, thus evincing

deliberate indifference to Plaintiff's constitutional rights."  FAC, Para. 53.  Defendants contend

that there is no evidence to support this allegation.

Plaintiff presented two possible references to this aspect of the City's summary judgment

motion.  The first is an acknowledgment by plaintiff that both officers "knew they were required

to comply with the Americans with Disabilities Act, and had training on such compliance."  Pl.'s

Resp. to Dfts' Concise Statement of Material Facts at Para. 13.  The second is an assertion that

plaintiff's *negligence* claim is brought against the City "for negligence in hiring, training,

supervising, or disciplining Romanowski and LaFrenz."  Pl.'s Resp. to Mem. in Supp. at 19

(citation omitted).  Plaintiff argues that his "negligence claims against the City relate to the

training of the two officers, the sufficiency of which is at best unclear from the record."  *Id*.

Plaintiff contends that the court should find that he has raised a factual issue as to the adequacy

of that training and whether the City created a foreseeable risk to a "protected interest of the kind that befell Whitfield." *Id*. (internal quotation and citation omitted).

Plaintiff's negligence claim is dismissed for the reasons provided above. Vague assertions that the negligence claim should be construed also as a challenge to the sufficiency of the officers' training fail to preclude summary judgment on that claim, and are inconsistent with plaintiff's acknowledgment that the officers knew they were required to comply with the ADA and received training regarding that compliance.

To the extent that plaintiff's quotes above were intended to address defendants' summary judgment motion as to plaintiff's *civil rights* action against the City, plaintiff's assertion that he has raised "a factual issue" to defeat summary judgment does not make it so. Plaintiff has either tacitly or intentionally waived his civil rights claim against the City. Moreover, no genuine issue of material fact is shown to exist as to that claim. As such, summary judgment is appropriate.

**CONCLUSION**

For the reasons provided above, defendant TriMet's Motion for Summary Judgment [73] is granted, and TriMet is dismissed as a defendant from this action. The Motion for Partial Summary Judgment brought by defendant City [56] is also granted. Plaintiff's Motion to Supplement [117] is denied as moot.

Trial in this matter, as well as a Pretrial Conference, needs to be scheduled. Counsel for plaintiff and the City are ordered to confer and then file a written Joint Status Report indicating proposed dates that are acceptable for the trial. Counsel shall estimate the length of trial, indicate any expected motions *in limine* or issues for trial, and address whether it would be appropriate to enlist the services of a settlement judge. This Joint Status Report must be filed no later than April 24, 2009.

IT IS SO ORDERED.

Dated this  30  day of March, 2009.


                                            /s/ Ancer L. Haggerty
                                          Ancer L. Haggerty
                                       United States District Judge